WILLIAM E. HANRAHAN
CIRCUIT COURT, BR. 7

STATE OF WISCONSIN        CIRCUIT COURT        DANE COUNTY

2008 OCT 27  PM 2: 14

DANE CO. CIRCUIT COURT

TANAGER CREEK, LLC,
d/b/a GCC STAFFING
709 Cricket Lane, #4
Middleton, WI 53562

Case No. _____
Case Code: 30301

    Plaintiff,

-v-

ARAB NATIONAL BANK,
Mouraba Street
P.O. Box 56921
Riyadah 11564
Kingdom of Saudi Arabia

THIS IS AN AUTHENTICATED COPY OF THE
ORIGINAL DOCUMENT FILED WITH THE DANE
COUNTY CLERK OF CIRCUIT COURT.

    Defendant.

CARLO ESQUEDA
CLERK OF CIRCUIT COURT

## SUMMONS

**THE STATE OF WISCONSIN, TO EACH DEFENDANT NAMED ABOVE:**

You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within twenty (20) days of receiving this summons, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the Complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is Dane County Clerk of Circuit Court, 215 South Hamilton Street, Madison, WI 53703 and to Josh Kopp, plaintiffs' attorney, whose address is Lathrop & Clark LLP, 740

Regent Street, Suite 400, P.O. Box 1507, Madison, Wisconsin, 53701-1507. You may have an attorney help or represent you.

If you do not provide a proper answer within twenty (20) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 24th day of October, 2008.

LATHROP & CLARK LLP

By: _____
Josh Kopp
State Bar No. 1041791
Attorneys for Plaintiff Tanager Creek, LLC,
d/b/a GCC Staffing

Mailing Address:
740 Regent Street, Suite 400
P.O. Box 1507
Madison, Wisconsin 53701-1507
(608) 257-7766

\L:\clients\TANACRE\1 Staffing and Placement Agreements\summons 102008 jck.doc

2

| | | |
|---|---|---|
| STATE OF WISCONSIN | CIRCUIT COURT | DANE COUNTY |

| | |
|---|---|
| TANAGER CREEK, LLC,<br>d/b/a GCC STAFFING,<br>709 Cricket Lane, #4<br>Middleton, WI 53562<br><br>        Plaintiff,<br>-v-<br><br>ARAB NATIONAL BANK,<br>Mouraba Street<br>P.O. Box 56921<br>Riyadah 11564<br>Kingdom of Saudi Arabia<br><br>        Defendant. | 2008 OCT 27 PM 2: 14<br>DANE CO. CIRCUIT COURT<br><br>Case No. _____<br>Case Code: 30301<br><br>THIS IS AN AUTHENTICATED COPY OF THE ORIGINAL DOCUMENT FILED WITH THE DANE COUNTY CLERK OF CIRCUIT COURT.<br><br>CARLO ESQUEDA<br>CLERK OF CIRCUIT COURT |

## COMPLAINT

NOW COMES the plaintiff, Tanager Creek, LLC, d/b/a GCC Staffing, by its attorneys, Lathrop & Clark LLP, and as and for its Complaint against the above-named defendant, alleges and shows the Court as follows:

1. The plaintiff, Tanager Creek, LLC, d/b/a GCC Staffing ("Plaintiff"), now is, and at all times hereinafter mentioned was, a limited liability company organized and existing under and by virtue of the laws of the State of Wisconsin, with a principal place of business located at 709 Cricket Lane, #4, Middleton, Wisconsin 53562.

2. The defendant, Arab National Bank ("Defendant"), now is, and at all times hereinafter mentioned was, a corporation organized and existing under and by virtue of the laws of the Country of Saudi Arabia with a principal place of business located at Mouraba Street, Riyadah 11564, Kingdom of Saudi Arabia.

3. On or about June 5, 2008, Defendant entered into a staffing and placement contract with Plaintiff to obtain the services of Donald Dentzer ("Dentzer"), an independent contractor located and made available to Defendant by Plaintiff. A true and correct copy of the staffing and placement contract relative to the placement of Dentzer ("Contract 1") is attached hereto as Exhibit A and is fully incorporated herein by reference. Correspondence from Defendant acknowledging acceptance of Contract 1 is attached hereto as Exhibit B and is fully incorporated herein by reference.

4. On or about June 30, 2008, Defendant entered into a staffing and placement contract with Plaintiff to obtain the services of Shakeel Baig ("Baig"), an independent contractor located and made available to Defendant by Plaintiff. A true and correct copy of the staffing and placement contract relative to the placement of Baig ("Contract 2") is attached hereto as Exhibit C and is fully incorporated herein by reference. Correspondence from Defendant acknowledging acceptance of Contract 2 is attached hereto as Exhibit D and is fully incorporated herein by reference.

5. Defendant agreed to pay Plaintiff the sum of $56,500.00 for every four weeks Dentzer provided services to Defendant, which sum includes a $2,500 travel expense reimbursement.

6. Defendant agreed to pay Plaintiff the sum of $46,000.00 for every four weeks Baig provided services to Defendant.

7. Dentzer began providing services to Defendant under Contract 1 on July 5, 2008.

8. Baig began providing services to Defendant under Contract 2 on July 6, 2008.

9. Dentzer's placement with Defendant under Contract 1 continued until October 6, 2008.

10. Baig's placement with Defendant continued until August 23, 2008.

11. Dentzer continued to work for Defendant after October 6, 2008, having been hired by Defendant.

12. Pursuant to Contract 1, Plaintiff is entitled to a placement fee equal to fifteen percent (15%) of the gross sixteen (16) month compensation to be paid to Dentzer by Defendant because Defendant hired Dentzer.

13. Upon information and belief, Dentzer will earn $673,750.00 over the next sixteen (16) months from Defendant. Accordingly, Plaintiff is entitled to a placement fee of $101,062.50 from Defendant. Defendant has failed to pay Plaintiff the placement fee.

14. Contract 1 provides that Plaintiff is entitled to reimbursement of all of its travel expenses relative to Dentzer because Defendant hired Dentzer. Plaintiff's travel expenses relative to Dentzer were $17,415.10, $9,111.53 of which was not included in the sums to be paid monthly under Contract 1. Defendant has failed to reimburse Plaintiff for its travel expenses.

15. Defendant has failed to pay Plaintiff the sums due under Contract 1 for the work performed by Dentzer. There is presently due and owing to Plaintiff from Defendant for the work performed by Dentzer the sum of $187,660.98, together with approved expenses of $4,593.86, for a total of $192,254.84.

3

16. Defendant has failed to pay Plaintiff the sums due under Contract 2 for the work performed by Baig. There is presently due and owing to Plaintiff from Defendant the sum of $78,857.28, together with approved expenses of $518.00, for a total of $79,375.28.

17. Plaintiff has been damaged in the amount of $381,804.15 as a result of Defendant's failure to pay the sums due and owing under Contract 1 and Contract 2.

18. Plaintiff is entitled to a judgment against Defendant for the sum of $381,804.15.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant as follows:

1. A money judgment in the amount of $381,804.15; and

2. For such other and further relief as the Court deems just and equitable.

Dated this 24th day of October, 2008.

LATHROP & CLARK LLP

By: _____
Josh Kopp
State Bar No. 1041791
Attorneys for Plaintiff Tanager Creek, LLC,
d/b/a GCC Staffing

Mailing Address:
740 Regent Street, Suite 400
P.O. Box 1507
Madison, Wisconsin 53701-1507
(608) 257-7766
L:\clients\TANACRE\1 Staffing and Placement Agreements\Complaint 102008 jck.doc

4

# STAFFING AND PLACEMENT CONTRACT

STAFFING AND PLACEMENT CONTRACT (this "Contract") is made and entered into as of the 5th day of June 2008, (the "Effective Date"), by and between Arab National Bank, a Saudi joint stock company ("Client"), and Tanager Creek, LLC d/b/a GCC Staffing, a Wisconsin limited liability company ("Provider").

1. **Services.** Provider shall focus its efforts on various projects and tasks related to Project Management. Because the Provider's work is designed to be collaborative in nature, it is normal for the scope to be uncertain at the outset of the engagement and refined as the engagement progresses. However, each employee or independent contractor provided by Provider to Client for specific projects and tasks shall be the subject of a Statement of Work which shall be an Exhibit of this Master Consulting Contract and incorporated herein by reference. The final Statement of Work may be modified by mutual agreement of the Provider and Client, but may not supersede the provisions of this Contract.

2. **Independent Contractor Status.** Provider acts as an independent contractor and not as an agent, representative or partner of Client. Provider has no authority to act on Client's behalf or bind Client.

3. **Scope and Timing.** Provider, and its employees and/or independent contractors shall perform the services contemplated hereby from the Effective Date through the 24th day of December 2008 (the "Term"), in keeping with the individual Statements of Work attached as Exhibits hereto and incorporated by reference herein unless the work of the individual Statement of Work or this Contract is terminated as provided herein, or this Contract is extended by mutual agreement of the parties. Provider agrees that Provider, its employees and/or independent contractors shall observe Client's workplace rules and regulations while performing services on-site at Client's offices.

4. **No Representations or Warranties.** Except as set forth in the last sentence of this paragraph, Provider makes no express or implied representations or warranties with respect to its work and guarantees no particular outcome or result. Provider does not provide legal advice and does not represent or guarantee that any particular course of conduct, strategy or action suggested by it or its personnel conforms to any applicable law, regulation or other legal activity. Provider hereby represents and warrants that (a) neither it nor its personnel providing services hereunder is a party to or bound by any employment, non-compete, confidentiality or similar agreement with any other person or entity that affects its or his ability to perform services for Client as contemplated hereunder and (b) none of the services rendered hereunder nor materials produced thereby do or will infringe any patent, copyright, trademark, trade secret or other proprietary right of any third party.

5. **Project Records.** Following the termination of services hereunder, Provider, its employees and independent contractors shall dispose of all Client information and project-related material other than final presentations. Provider shall provide to Client reasonably adequate files and materials based on Provider work performed hereunder to permit Client to continue to operate following termination of services hereunder.

6. **Billing and Payment.** Client shall pay Provider, for the services generally described in (1) above, and as specifically stated in the Statements of Work attached as Exhibits hereto. All payments will be made in U.S. dollars to Provider's address set forth below. Provider shall submit an invoice for services rendered with payment made to the Provider in a timeframe consistent with Clients established payables policy. Client will also pay Provider, its employees and independent contractors for all pre-approved travel, accommodation and meal expenses in accordance with Client's standard expense payment policy.

7. **Taxes.** Provider shall be solely responsible for payment of income taxes and social security, workers compensation insurance, disability benefits and the like relating to performance of services hereunder. Client shall not withhold any taxes or make any other deductions from payment.

8. **Confidential Information.** Client may designate information and / or materials as confidential or proprietary. If no designation is made, Provider will treat all information and materials received from Client as confidential information. Without the Client's prior consent, Provider will not disseminate Confidential Information to others or use Confidential Information for any purpose other than rendering services hereunder. Confidential Information does not include information or documents that (a) are now or subsequently become generally available to the public through no fault on Provider's part, (b) were already rightfully in Provider's possession, (c) are independently developed by Provider without the use of Confidential Information, or (d) are obtained by Provider from a third party which has the right to transfer or disclose them. At the time of termination of the engagement hereunder, Provider shall return to Client or destroy any Confidential Information than in its possession.

9. **Ownership of Intellectual Property.** All materials produced by Provider in connection with the engagement shall be deemed to be "work make for hire" (as that term is defined in the US Copyright Act or other applicable law) owned by the Client. Should any original or derivative works created by Provider in the course of the engagement hereunder be found not to satisfy the criteria of works made for hire, Provider hereby transfers and assigns to Client all right, title and interest held or hereafter acquired by Provider in such original or derivative works, any copyrights, patents, inventions (whether or not patentable and whether or not reduced to practice), trademarks or service marks therein, registrations thereof and pending applications therefore, and all divisions, renewals, extensions, continuations and continuations-in-part thereof and therein, and the merchandising rights therein, now or hereafter known or acquired. Provider shall promptly perform all actions reasonably requested by Client (whether during or after the engagement), at Client's expense, to establish and confirm such ownership (including, without limitation, executing assignments, powers of attorney and other instruments). With Client's prior written consent (which shall not be unreasonably withheld), Provider may use any concepts, ideas, methodologies or approaches developed by Provider under this Contract which are of general applicability and which are not specific to the services delivered hereunder or to the business or industry of Client, provided that the use of such concepts, ideas, methodologies or approaches does not (i) infringe or misappropriate any copyright or other intellectual property right of Client or (ii) violate any obligation of confidentiality of Provider to Client.

10. **Termination.** Either party may terminate Provider's services prior to completion of the term set forth in paragraph 3 upon not less than fourteen (14) days prior written notice at any time; provided, however that Client may terminate this agreement for cause at any time immediately upon written notice to Provider. Further, such notice and termination rights contained in this paragraph shall apply to each individual employee and/or independent contractor of Provider hired pursuant to a Statement of Work attached as an Exhibit hereto and incorporated herein by reference. Unless such termination is for cause or as otherwise agreed by the parties, Provider shall be obligated to continue to perform hereunder during any notice period and shall be paid for services rendered during such notice period in accordance herewith. Where termination is for cause, Client shall pay Provider for work performed prior to receipt of the notice of termination. Termination shall not affect any provision of this Contract that by its nature would be expected to survive termination and each such provision shall so survive, including, but not limited to provisions relating to payment for services rendered prior to termination, the payment described in the preceding sentence, confidentiality, warranties indemnification, ownership rights and legal status of the parties.

11. **Damages Limitations.** Neither Provider nor Client shall in any circumstances be liable to the other for any incidental, consequential, special, multiple or punitive damages or for legal fees. Each party' liability with respect to the engagement shall in no event exceed the fees paid by Client to Provider or account of the engagement hereunder.

12. **Indemnification.** Subject to the damages limitations specified above, Client shall indemnify Provider and hold it harmless against losses or damages claimed to be caused by, or to arise out of, Provider's work, except for losses and damages arising by reason of any gross negligence or willful misconduct on Provider's part or breach of this Contract by Provider. Provider shall indemnify and hold Client harmless against losses or damages that Client incurs by reason of any gross negligence or willful misconduct on Provider's part or breach of this Contract by Provider. Client shall defend, indemnify and hold harmless Provider from any claims by third parties against Client or Provider arising out of the provision of services under this agreement, except such liability that shall arise solely due to Provider's negligence or breach of applicable law.

13. **Governing Law; Dispute Resolution.** This Contract shall be regarded as contracts to be interpreted in accordance with the laws of the State of Wisconsin applicable to contracts entered into and wholly to be performed therein, without regard to that body of law relating to conflict of laws. Prior to instituting any sort of legal proceeding against one another, Provider and Client shall attempt to resolve by good faith negotiation any disagreement arising out of or related to Provider's work for Client.

14. **Notices.** All notices shall be sent to the addresses set forth on the signature page hereto or to such other address as specified by notice in writing by a party. All notices shall be in writing and shall be deemed to have been duly given when received if personally delivered; upon confirmation of transmission if transmitted by telecopy, electronic or digital transmission method; the day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. If notice is given in multiple fashions, the date of first effective notice shall control.

15. **Miscellaneous.** This Contract constitutes the entire understanding between Provider and Client relating to the engagement hereunder, supersedes all prior oral and written communications and proposals, and may be amended or modified only in writing signed by both parties. Terms and provisions hereof can only be waived in whole or part in writing. If any portion hereof is determined to be invalid, illegal, or unenforceable the remaining provisions shall nonetheless continue in full force and effect. Neither party may assign or otherwise transfer this Contract to any third party without the prior express written consent of the other party. Any attempted assignment or transfer in violation of this provision shall be null and void.

\* \* \* \* \* \*

IN WITNESS WHEREOF, the parties to this Contract have executed this Contract as of the date first above written.

ARAB NATIONAL BANK

By:_____

Title:
Name:_____

Address:  PO Box 56921
Riyadh 11564
Kingdom Of Saudi Arabia

GCC STAFFING

Signature: *B Julian Newport* (signature)

Print Name: B. Julian Newport

Address:  709 Cricket Lane, Suite 4
Middleton, WI 53562

SSN/FEIN: 39-1983645

 ARAB NATIONAL BANK-H.O.    ⌀002

# EXHIBIT 1: STATEMENT OF WORK

1.0    **Resource**
GCC Staffing ("Provider") is supplying Arab National Bank ("Client") with Donald Dentzer ("Resource) as a contract-to-hire staff resource. This Resource has been screened by Client and is deemed acceptable by Client for the task(s) listed below. This Exhibit is attached to the Staffing and Placement Contract ("Contract") executed between Provider and Client on the 5th day of June 2008.

2.0    **Tasks, Start Date and Contract Term**
This Resource shall be assigned the task related to Infrastructure-Data Center and Telecommunications and shall be expected to help the Client execute on Client's Infrastructure Upgrade and Redeployment project. Resource shall report for work on the 28th day of June 2008 at Client Site. Resource shall work approximately forty-five (45) hours per week or more as required by the Client excluding normal holidays or time off. The term of the contract ("Contract Term") is twenty-six (26) weeks. The Resource shall work approximately twenty-four (24) weeks during the Contract Term.

3.0    **Service Sites:** Services will be performed at the following locations
Client offices located in Riyadh, Kingdom of Saudi Arabia and Resource is expected to perform most of his assigned tasks on site.

4.0    **Client Representative:** Resource will perform Services for
Client Representative Name: Ghulam Muntazir
Phone Number: +966 558 844 372
Email Address: gmuntazir@anb.com.sa

5.0    **Contractor Compensation**
As compensation for the Services rendered pursuant to this Contract, Client will pay Provider the sum of $54,000 for every four (4) weeks ("Month") the Resource provides contracted work to Client plus $2,500 in allocated flight travel expenses for a total of $56,500 every Month, to be paid as follows:

- On the Resource's last on-site work day of every Month, or shortly thereafter, the Resource shall submit a time sheet that, if acceptable by Client, shall be approved by Client Representative.

- The Resource and/or Client Representative shall either Fax or Email the time sheet to the Provider.

- The Provider shall submit an invoice to Client within five (5) work days of receiving the time sheet or shortly thereafter.

- The Client shall remit the complete invoiced sum to the Provider within five (5) days of receipt of invoice or submit a written letter disputing the invoice and the detailed basis of any dispute.

6.0    **Placement Compensation**
At the end of the Contract Term as described herein, or earlier if mutually agreed upon by the Client and Provider, the Client shall have the option to hire the Resource as a full-time employee.

As compensation for this placement, the Client will pay Provider a placement fee ("Placement Fee") calculated as fifteen percent (15%) of the gross sixteen (16) month compensation to be paid to the employed Resource, to be paid as follows:

- The Client shall the total Placement Fee to the Provider within five (5) days of the Resource's hire date.

If Client hires Resource before the end of the Contract Term, Client agrees to pay any remaining travel cost previously approved, including but not limited to the cost of the Resource's business class return flight.

7.0 **Expenses**
Client shall pay for all Client Site Accommodation and Meals in accordance with Client's standard expense payment policy.

Client shall pay for all reasonable, pre-approved Travel, Accommodation, and Meals expenses for all travel requested by Client in accordance with Client's standard expense payment policy. All non-local trips must be approved by Client before commencing.

_____
Account Executive
GCC Staffing

_____
Executive
Arab National Bank

Peter M. Robinson

ARAB NATIONAL BANK-H.O.                    ☒001

**anb**

Human Resources Group
*Recruitment Department*

Date: 07-June -2008G
*Ref# REC/SD/0608/011*

Mr. Julian Newport
Account Executive
GCC Staffing

Hiring of Mr. Donald Dentzer
_____

We confirm the hiring of Mr. Donald Dentzer as an ITG Technical Advisor for an initial period of (6) six months at the billing rate of USD 56,500 per month. The terms & Conditions will be as per our existing contract with your company. Please let us know when he can join us;

Should you have any query, please contact the undersigned at Tel. # 402 9000 Ext. 8495.

With kind Regards,

**Khalid AL Somali**
*Assistant Manager*
*Head of Recruitment Department*

**Peter M. Robinson**
*Deputy General Manager*
*Human Resources Group*

arab national bank Saudi Stock Co. Paid up Capital S.R. 4550 Million
P. O. Box 56921, Riyadh 11564 - Kingdom of Saudi Arabia

# STAFFING AND PLACEMENT CONTRACT

STAFFING AND PLACEMENT CONTRACT (this "Contract") is made and entered into as of the 5th day of June 2008, (the "Effective Date"), by and between Arab National Bank, a Saudi joint stock company ("Client"), and Tanager Creek, LLC d/b/a GCC Staffing, a Wisconsin limited liability company ("Provider").

1. **Services.** Provider shall focus its efforts on various projects and tasks related to Project Management. Because the Provider's work is designed to be collaborative in nature, it is normal for the scope to be uncertain at the outset of the engagement and refined as the engagement progresses. However, each employee or independent contractor provided by Provider to Client for specific projects and tasks shall be the subject of a Statement of Work which shall be an Exhibit of this Master Consulting Contract and incorporated herein by reference. The final Statement of Work may be modified by mutual agreement of the Provider and Client, but may not supersede the provisions of this Contract.

2. **Independent Contractor Status.** Provider acts as an independent contractor and not as an agent, representative or partner of Client. Provider has no authority to act on Client's behalf or bind Client.

3. **Scope and Timing.** Provider, and its employees and/or independent contractors shall perform the services contemplated hereby from the Effective Date through the 24th day of December 2008 (the "Term"), in keeping with the individual Statements of Work attached as Exhibits hereto and incorporated by reference herein unless the work of the individual Statement of Work or this Contract is terminated as provided herein, or this Contract is extended by mutual agreement of the parties. Provider agrees that Provider, its employees and/or independent contractors shall observe Client's workplace rules and regulations while performing services on-site at Client's offices.

4. **No Representations or Warranties.** Except as set forth in the last sentence of this paragraph, Provider makes no express or implied representations or warranties with respect to its work and guarantees no particular outcome or result. Provider does not provide legal advice and does not represent or guarantee that any particular course of conduct, strategy or action suggested by it or its personnel conforms to any applicable law, regulation or other legal activity. Provider hereby represents and warrants that (a) neither it nor its personnel providing services hereunder is a party to or bound by any employment, non-compete, confidentiality or similar agreement with any other person or entity that affects its or his ability to perform services for Client as contemplated hereunder and (b) none of the services rendered hereunder nor materials produced thereby do or will infringe any patent, copyright, trademark, trade secret or other proprietary right of any third party.

5. **Project Records.** Following the termination of services hereunder, Provider, its employees and independent contractors shall dispose of all Client information and project-related material other than final presentations. Provider shall provide to Client reasonably adequate files and materials based on Provider work performed hereunder to permit Client to continue to operate following termination of services hereunder.

6. **Billing and Payment.** Client shall pay Provider, for the services generally described in (1) above, and as specifically stated in the Statements of Work attached as Exhibits hereto. All payments will be made in U.S. dollars to Provider's address set forth below. Provider shall submit an invoice for services rendered with payment made to the Provider in a timeframe consistent with Clients established payables policy. Client will also pay Provider, its employees and independent contractors for all pre-approved travel, accommodation and meal expenses in accordance with Client's standard expense payment policy.

7. **Taxes.** Provider shall be solely responsible for payment of income taxes and social security, workers compensation insurance, disability benefits and the like relating to performance of services hereunder. Client shall not withhold any taxes or make any other deductions from payment.

8. **Confidential Information.** Client may designate information and / or materials as confidential or proprietary. If no designation is made, Provider will treat all information and materials received from Client as confidential information. Without the Client's prior consent, Provider will not disseminate Confidential Information to others or use Confidential Information for any purpose other than rendering services hereunder. Confidential Information does not include information or documents that (a) are now or subsequently become generally available to the public through no fault on Provider's part, (b) were already rightfully in Provider's possession, (c) are independently developed by Provider without the use of Confidential Information, or (d) are obtained by Provider from a third party which has the right to transfer or disclose them. At the time of termination of the engagement hereunder, Provider shall return to Client or destroy any Confidential Information than in its possession.

9. **Ownership of Intellectual Property.** All materials produced by Provider in connection with the engagement shall be deemed to be "work make for hire" (as that term is defined in the US Copyright Act or other applicable law) owned by the Client. Should any original or derivative works created by Provider in the course of the engagement hereunder be found not to satisfy the criteria of works made for hire, Provider hereby transfers and assigns to Client all right, title and interest held or hereafter acquired by Provider in such original or derivative works, any copyrights, patents, inventions (whether or not patentable and whether or not reduced to practice), trademarks or service marks therein, registrations thereof and pending applications therefore, and all divisions, renewals, extensions, continuations and continuations-in-part thereof and therein, and the merchandising rights therein, now or hereafter known or acquired. Provider shall promptly perform all actions reasonably requested by Client (whether during or after the engagement), at Client's expense, to establish and confirm such ownership (including, without limitation, executing assignments, powers of attorney and other instruments). With Client's prior written consent (which shall not be unreasonably withheld), Provider may use any concepts, ideas, methodologies or approaches developed by Provider under this Contract which are of general applicability and which are not specific to the services delivered hereunder or to the business or industry of Client, provided that the use of such concepts, ideas, methodologies or approaches does not (i) infringe or misappropriate any copyright or other intellectual property right of Client or (ii) violate any obligation of confidentiality of Provider to Client.

10. **Termination.** Either party may terminate Provider's services prior to completion of the term set forth in paragraph 3 upon not less than fourteen (14) days prior written notice at any time; provided, however that Client may terminate this agreement for cause at any time immediately upon written notice to Provider. Further, such notice and termination rights contained in this paragraph shall apply to each individual employee and/or independent contractor of Provider hired pursuant to a Statement of Work attached as an Exhibit hereto and incorporated herein by reference. Unless such termination is for cause or as otherwise agreed by the parties, Provider shall be obligated to continue to perform hereunder during any notice period and shall be paid for services rendered during such notice period in accordance herewith. Where termination is for cause, Client shall pay Provider for work performed prior to receipt of the notice of termination. Termination shall not affect any provision of this Contract that by its nature would be expected to survive termination and each such provision shall so survive, including, but not limited to provisions relating to payment for services rendered prior to termination, the payment described in the preceding sentence, confidentiality, warranties, indemnification, ownership rights and legal status of the parties.

11. **Damages Limitations.** Neither Provider nor Client shall in any circumstances be liable to the other for any incidental, consequential, special, multiple or punitive damages or for legal fees. Each party's liability with respect to the engagement shall in no event exceed the fees paid by Client to Provider on account of the engagement hereunder.

12. **Indemnification.** Subject to the damages limitations specified above, Client shall indemnify Provider and hold it harmless against losses or damages claimed to be caused by, or to arise out of, Provider's work, except for losses and damages arising by reason of any gross negligence or willful misconduct on Provider's part or breach of this Contract by Provider. Provider shall indemnify and hold Client harmless against losses or damages that Client incurs by reason of any gross negligence or willful misconduct on Provider's part or breach of this Contract by Provider. Client shall defend, indemnify and hold harmless Provider from any claims by third parties against Client or Provider arising out of the provision of services under this agreement, except such liability that shall arise solely due to Provider's negligence or breach of applicable law.

13. **Governing Law; Dispute Resolution.** This Contract shall be regarded as contracts to be interpreted in accordance with the laws of the State of Wisconsin applicable to contracts entered into and wholly to be performed therein, without regard to that body of law relating to conflict of laws. Prior to instituting any sort of legal proceeding against one another, Provider and Client shall attempt to resolve by good faith negotiation any disagreement arising out of or related to Provider's work for Client.

14. **Notices.** All notices shall be sent to the addresses set forth on the signature page hereto or to such other address as specified by notice in writing by a party. All notices shall be in writing and shall be deemed to have been duly given when received if personally delivered; upon confirmation of transmission if transmitted by telecopy, electronic or digital transmission method; the day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. If notice is given in multiple fashions, the date of first effective notice shall control.

15. **Miscellaneous.** This Contract constitutes the entire understanding between Provider and Client relating to the engagement hereunder, supersedes all prior oral and written communications and proposals, and may be amended or modified only in writing signed by both parties. Terms and provisions hereof can only be waived in whole or part in writing. If any portion hereof is determined to be invalid, illegal, or unenforceable the remaining provisions shall nonetheless continue in full force and effect. Neither party may assign or otherwise transfer this Contract to any third party without the prior express written consent of the other party. Any attempted assignment or transfer in violation of this provision shall be null and void.

\* \* \* \* \* \*

IN WITNESS WHEREOF, the parties to this Contract have executed this Contract as of the date first above written.

ARAB NATIONAL BANK

By:_____

Title:
Name:_____

Address:   PO Box 56921
           Riyadh 11564
           Kingdom Of Saudi Arabia

GCC STAFFING

Signature: _B. Julian Newport_

Print Name:  B. Julian Newport

Address:   709 Cricket Lane, Suite 4
           Middleton, WI 53562

SSN/FEIN:__ 39-1983645 _____

# EXHIBIT 2: STATEMENT OF WORK

**1.0 Resource**

GCC Staffing ("Provider") is supplying Arab National Bank ("Client") with Shakeel Baig ("Resource) as a contract-to-hire staff resource. This Resource has been screened by Client and is deemed acceptable by Client for the task(s) listed below. This Exhibit is attached to the Staffing and Placement Contract ("Contract") executed between Provider and Client on the 5th day of June 2008.

**2.0 Tasks, Start Date and Contract Term**

This Resource shall be assigned the task related to Special Project Management and Compliance and shall be expected to help the Client execute on Client's Process Control and Compliance projects. Resource shall report for work on the 5th day of July 2008 at Client Site. Resource shall work approximately forty-five (45) hours per week or more as required by the Client excluding normal holidays or time off. The term of the contract ("Contract Term") is twenty-six (26) weeks. The Resource shall work approximately twenty-four (24) weeks during the Contract Term.

**3.0 Service Sites: Services will be performed at the following locations**

Client offices located in Riyadh, Kingdom of Saudi Arabia and Resource is expected to perform most of his assigned tasks on site.

**4.0 Client Representative: Resource will perform Services for**
Client Representative Name: Bruce Horvat
Phone Number: +966 504 338 159
Email Address: bhorvat@anb.com.sa

**5.0 Contractor Compensation**

As compensation for the Services rendered pursuant to this Contract, Client will pay Provider the sum of $44,000 for every four (4) weeks ("Month") the Resource provides contracted work to Client plus $2,000 in allocated flight travel expenses for a total of $46,000 every Month, to be paid as follows:

- On the Resource's last on-site work day of every Month, or shortly thereafter, the Resource shall submit a time sheet that, if acceptable by Client, shall be approved by Client Representative.

- The Resource and/or Client Representative shall either Fax or Email the time sheet to the Provider.

- The Provider shall submit an invoice to Client within five (5) work days of receiving the time sheet or shortly thereafter.

- The Client shall remit the complete invoiced sum to the Provider within five (5) days of receipt of invoice or submit a written letter disputing the invoice and the detailed basis of any dispute.

**6.0 Placement Compensation**

At the end of the Contract Term as described herein, or earlier if mutually agreed upon by the Client and Provider, the Client shall have the option to hire the Resource as a full-time employee.

As compensation for this placement, the Client will pay Provider a placement fee ("Placement Fee") calculated as fifteen percent (15%) of the gross sixteen (16) month compensation to be paid to the employed Resource, to be paid as follows:

- The Client shall the total Placement Fee to the Provider within five (5) days of the Resource's hire date.

If Client hires Resource before the end of the Contract Term, Client agrees to pay any remaining travel cost previously approved, including but not limited to the cost of the Resource's business class return flight.

7.0  **Expenses**

Client shall pay for all Client Site Accommodation and Meals in accordance with Client's standard expense payment policy.

Client shall pay for all reasonable, pre-approved Travel, Accommodation, and Meals expenses for all travel requested by Client in accordance with Client's standard expense payment policy. All non-local trips must be approved by Client before commencing.

_____
Account Executive
GCC Staffing

_____
Executive
Arab National Bank

_____
Executive
Arab National Bank

.--- (747    ARAB NATIONAL BANK-H.O.                   ⌀002



Human Resources Group
*Recruitment Department*

Date: 30-June -2008G
Ref:#RFC/SD/0608/027

Mr. Julian Newport
Account Executive
GCC Staffing

Hiring of Mr. Shakeel Baig

We confirm the hiring of Mr. Shakeel Baig as an IT Standards Officer for an initial period of (6) six months at the billing rate of USD 46,000 per month. The terms & Conditions will be as per our existing contract with your company. Please let us know when he can join us;

Should you have any query, please contact the undersigned at Tel. # 402 9000 Ext. 8495.

With kind Regards,

**Khalid AL Somali**
*Assistant Manager*
*Head of Recruitment Department*

**Peter M. Robinson**
*Deputy General Manager*
*Human Resources Group*

arab national bank Saudi Stock Co. Paid up Capital S.R. 4550 Million
P O Box 56921 Riyadh 11564 Kingdom of Saudi Arabia
البنك العربي الوطني شركة مساهمة سعودية رأس المال المدفوع ٤٥٥٠ مليون ريال
ص.ب ٥٦٩٢١ الرياض ١١٥٦٤ المملكة العربية السعودية